UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AARON D. GEWIRTZMAN, et al.,

                Appellants,

        -against-

SAMUEL MARKOWITZ, et al.,

               Respondents.

**MEMORANDUM OPINION
AND ORDER**

22-CV-02450 (PMH)

PHILIP M. HALPERN, United States District Judge:

The instant appeal concerns the March 7, 2022 Order ("Order"), entered by Judge Robert D. Drain of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), granting a motion for summary judgment dismissing the underlying adversary proceeding captioned *Congregants of Mosdos Chofetz Chaim Inc. v. Mosdos Chofetz Chaim, Inc., et al.*, No. 21-07030 (Bankr. S.D.N.Y. 2021). (Br. Doc. 104, "Order").[1] The adversary proceeding concerned the underlying plaintiffs'—Aaron D. Gewirtzman ("Gewirtzman"), Bent Philipson ("Philipson"), Daniel Rosenblum ("Rosenblum"), Joseph Grunwald ("Grunwald"), Mark Blisko ("Blisko"), Shimon Zaks ("Shimon"), and Rabbi Mayer Zaks ("Rabbi Mayer" and collectively, "Appellants")—assertion that they constituted and controlled Congregation Radin Development Inc. ("CRDI").

The Order granted a motion for summary judgment filed by defendants in the adversary proceeding—Yom T. Henig ("Henig"), Samuel Markowitz ("Markowitz"), Steven Green ("S. Green"), Daniel Green ("D. Green"), and Yehudah Blumenfeld ("Blumenfeld" and collectively,

---

[1] Citations to "Br. Doc." refer to docket entries in the underlying adversary proceeding whereas citations to "Doc." refer to docket entries in this matter. "The Court may take judicial notice of the bankruptcy docket, and documents on the docket not included in Appellant's designation of the record on appeal, including hearing transcripts." *Morillo v. Wells Fargo Bank, N.A.*, No. 19-CV-08183, 2020 WL 2539068, at *1 n.2 (S.D.N.Y. May 19, 2020) (citing Fed. R. Evid. 201).

"Appellees"). (*Id.*). The Order found that "none of the [Appellants] are officers, trustees, members, or otherwise in control of [CRDI] and . . . the persons who allegedly elected them as such were not congregants or members of [CRDI] with authority to elect them as such." (*Id.* at 2).

Appellants appealed the Order to this Court on March 25, 2022. (Doc. 1). Following a status conference on May 3, 2022, Appellants filed their opening brief on May 27, 2022 (Doc. 12, "App. Br."), Respondents filed their opposition on June 14, 2022 (Doc. 13, "Opp. Br."), and Appellants filed their reply on June 30, 2022 (Doc. 14, "Reply").

For the reasons set forth below, the Order is AFFIRMED.

## <u>BACKGROUND</u>

Appellants filed this case originally in New York State Supreme Court on June 8, 2021, captioned as *Congregation Radin Dev. Inc., et al. v. Yom T. Henig, et al.*, Index No. 33145/2021 (Rockland Cty. 2021), after multiple attempts to challenge the transfer of the property at 1-60 Kiryas-Radin Drive, Spring Valley, New York 10977 (the "Property") from Mosdos Chofetz Chaim ("Mosdos") to CRDI as set forth in the Bankruptcy Court's October 2, 2019 plan of reorganization for Mosdos (the "Plan"). Appellants now contend that they, rather than Appellees, constitute and control CRDI. Appellants' initial claim for relief sought to declare that Appellants are the rightful trustees of CRDI while also declaring that Appellees are not the rightful trustees of CRDI. Appellees removed the action on June 11, 2021, and the matter was referred to the Bankruptcy Court on June 14, 2021. (Br. Doc. 1). Appellants thereafter sought to remand. The Bankruptcy Court denied the request on October 4, 2021 (Br. Doc. 31) and leave to appeal was denied by this Court on March 30, 2022 (*CRDI v. Henig*, No. 21-CV-08691 (S.D.N.Y. 2021) (Doc. 15)). Appellants thereafter filed, on November 4, 2021, an Amended Complaint with the same

claims for relief except they removed CRDI as a plaintiff in the Amended Complaint. (Br. Doc. 41, "Am. Compl.").

The Amended Complaint seeks the same judgment declaring that Appellants are the legitimate trustees of CRDI and that Appellees are not. (*Id.* at 1-2). The basis for this assertion is that, whether by resignation or lack of proper election, Appellees were no longer proper trustees of CRDI. (*Id.* at 2-3). Appellants allege further that they were elected as trustees on May 25, 2021 at a special meeting of the "members" of CRDI, in accordance with New York Religious Corporations Law § 195 ("RCL § 195") and CRDI's by-laws. (*Id.* at 3). RCL § 195 establishes that the voters of a religious corporation, qualified to elect the trustees thereof are:

> All persons who are then members in good and regular standing of such church by admission into full communion or membership therewith in accordance with the rules and regulations thereof . . . or [those] who have been stated attendants of divine worship in such church and have regularly contributed to the financial support thereof.

Membership in CRDI is thus determined by CRDI's by-laws, which provide that:

> Membership in this organization is open to all persons of the Jewish faith, who shall be sabbath observing and who accept upon themselves to follow in the tenets of the Jewish faith and wish to advance the principles of the Jewish faith according to the teachings and directions of the saintly and revered Rabbi Israel Mayer Kagan 1834-1933 as taught by the ecclesiasticle leadership of the Corporation who shall be a descendant of the Holy Rabbi. Members shall pay annual dues, if so fixed by the Board of Trustees.

(Br. Doc. 64-29 at 5). Appellants also allege that the annual meeting of CRDI was held on September 1, 2021, whereby the actions taken at the May 25, 2021 special meeting were affirmed. (Am. Compl. at 3).

Each of Appellants' allegations must be considered against the backdrop of the drawn-out litigation between these parties over this Property. CRDI was incorporated as a not-for-profit

religious corporation on May 23, 2019 and purchased the Property from Mosdos on October 25, 2019 pursuant to the Plan. (*Id.* at 2). Thereafter, congregants of Mosdos and their leader, Rabbi Mayer, initiated multiple adversary proceedings against CRDI and Rabbi Mayer's brother, Rabbi Aryeh Zaks ("Rabbi Aryeh"). After years of litigation, the Bankruptcy Court, on May 25, 2021, issued an injunctive order which prohibited Rabbi Mayer and those acting in concert with him from entering the Property or engaging in stated conduct thereon without the express approval of CRDI which was, at that time, controlled by Appellees. *Congregants of Mosdos Chofetz Chaim Inc. v. Mosdos Chofetz Chaim, Inc., et al.*, No. 21-07023 (Bankr. S.D.N.Y. 2021 (Doc. 24) (the "Injunction")). That Injunction has been the subject of litigation of its own spawning from Rabbi Mayer's continued refusal to comply with the Injunction, ultimately in contempt thereof, including two recently-decided appeals by this Court. *See Zaks v. Congregation Radin Dev., Inc.*, No. 22-CV-03807, 2022 WL 4387450 (S.D.N.Y. Sept. 22, 2022); *Zaks v. Mosdos Chofetz Chaim, Inc.*, No. 21-CV-10441, 2022 WL 4387450 (S.D.N.Y. Sept. 22, 2022).

Prior to issuance of the Injunction, the congregants of Mosdos, including Appellants, were permitted to continue worshipping on the Property pursuant to a *status quo* order issued by the Bankruptcy Court. Appellants were permitted to stay on the Property despite CRDI's clear ownership of the Property and CRDI's lease of the Yeshiva building on the Property to Chofetz Chaim, Inc. ("CCI"), of which Rabbi Aryeh was the head Rabbi. (*See* Br. Doc. 334, *In re. Mosdos Chofetz Chaim Inc*, No. 12-23616). However, on May 25, 2021—the very same day that Rabbi Mayer and his followers were no longer permitted to remain on the Property under the terms of the Injunction—Appellants purported to hold a special meeting of "CRDI" and elect themselves the entity's trustees, before initiating the instant lawsuit as CRDI. (*See generally,* Am. Compl.).

Appellees moved for summary judgment on January 18, 2022 (Br. Doc. 64) and, after the motion was fully briefed, the Bankruptcy Court held a hearing on March 4, 2022 (Br. Doc. 103, "Tr."). At that hearing, the Bankruptcy Court heard argument from the parties on the motion for summary judgment and announced its findings of law and fact on the record. (*See generally id.*). The Bankruptcy Court determined, in relevant part, that:

> [t]he underlying key to [Appellants'] proposition asserted in the complaint is that these people participating in [the May 25, 2021 and September 8, 2021] meetings were members of CRDI. I have determined that there is no material factual issue in dispute as to that assertion. There is nothing to support as a factual matter their being CRDI. To the contrary, there's a substantial factual record . . . that they had no connection with CRDI, and that they were instead members of the debtor, Mosdos Chofetz Chaim.

(*Id.* at 49:13-23). As such, because Appellants' argument as to their alleged membership in CRDI did not raise any issue of fact and was based on the "legal proposition [that] if you worship there, you're automatically a member," the Bankruptcy Court granted summary judgment to Appellees and dismissed the adversary proceeding. (*Id.* at 32:17-19). The Bankruptcy Court firmed up its bench ruling on March 7, 2022 with a written Order. (Br. Doc. 104). Appellants filed this appeal on March 25, 2022, raising two arguments for this Court to consider: (i) whether the Bankruptcy Court had subject matter jurisdiction over the adversary proceeding; and (ii) whether genuine issues of material fact precluded the Bankruptcy Court from granting summary judgment and relatedly, whether the Bankruptcy Court erred in refusing to permit Appellants to take discovery to oppose the motion. (App. Br. at i-ii).

## STANDARD OF REVIEW

Where—as here—the Court exercises its appellate jurisdiction over proceedings in the United States Bankruptcy Court, *see* 28 U.S.C. § 158(a), it:

> may affirm, modify, vacate, set aside or reverse any judgment,
> decree, or order of a court lawfully brought before it for review, and
> may remand the cause and direct the entry of such appropriate
> judgment, decree, or order, or require such further proceedings to be
> had as may be just under the circumstances.

28 U.S.C. § 2106; *see also In re Bernard L. Madoff Inv. Secs., LLC*, No. 15-CV-01151, 2016 WL 183492, at *8 n.14 (S.D.N.Y. Jan. 14, 2016) (explaining that, although Federal Rule of Bankruptcy Procedure 8013 was amended and language explaining that the Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings" was removed, the authority remains because "logic compels" that result "with respect to the appellate powers of the District Court" (internal quotation marks omitted)), *aff'd sub nom. Matter of Bernard L. Madoff Inv. Secs., LLC*, 697 F. App'x 708 (2d Cir. 2017).

Generally, when sitting in this appellate capacity, a district court reviews a bankruptcy court's findings of fact for clear error and reviews conclusions of law *de novo*. *See In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, [and] its conclusions of law *de novo* . . . ." (internal citations omitted)); *In re Enron Corp.*, 307 B.R. 372, 378 (S.D.N.Y. 2004) ("A bankruptcy court's conclusions of law are reviewed *de novo* and its findings of fact for clear error.").

When, however, "a district court reviews a bankruptcy court's grant of summary judgment, it reviews the decision '*de novo* because the determination that there are no genuine issues of material fact is a legal conclusion.'" *In re Carpenter*, 566 B.R. 340, 347 (S.D.N.Y. 2017) (quoting *In re Teligent Inc.*, 324 B.R. 479, 487 (S.D.N.Y. 2005)); *see also In re Lehman Bros. Inc.*, No. 17-CV-06246, 2018 WL 10454936, at *2 (S.D.N.Y. Sept. 26, 2018) ("A district court reviews an appeal of a Bankruptcy Court's grant of summary judgment *de novo*, drawing all factual inferences

in favor of the non-moving party." (internal quotation marks omitted)), *aff'd sub nom. In re Lehman Bros. Holdings Inc.*, 792 F. App'x 16 (2d Cir. 2019); *Townsend v. Ganci*, 566 B.R. 129, 133 (E.D.N.Y. 2017) ("A bankruptcy court's decision to grant summary judgment based upon undisputed facts is reviewed *de novo*."), *aff'd sub nom. In re Townsend*, 726 F. App'x 91 (2d Cir. 2018).

"In bankruptcy adversary proceedings such as this one, the standard for summary judgment is the same as in any federal civil action." *Osuji v. Azie*, No. 20-CV-01365, 2021 WL 602699, at *3 (E.D.N.Y. Feb. 16, 2021); *see also* Fed. R. Bankr. P. 7056 ("Rule 56 F.R.Civ.P. applies in adversary proceedings . . . .").

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id*. (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. *See Bryant v. Iheanacho*, No. 20-2256, 2021 WL 4314477, at *1 (2d Cir. Sept. 23, 2021) ("It is a bedrock rule

of civil procedure that a district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented." (quoting *Frost v. New York City Police Dep't*, 980 F.3d 231, 245 (2d Cir. 2020)). Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134,

140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant dismissing the complaint is proper").

## ANALYSIS

Appellants challenges to the Order concerning subject matter jurisdiction, the propriety of granting summary judgment, and the refusal of the Bankruptcy Court to permit Appellants to take necessary discovery to oppose the motion will be addressed *seriatim*.

I.     Subject Matter Jurisdiction

Appellants argue first that "[b]ecause the Bankruptcy Court lacked subject matter jurisdiction over the action, it erred in granting summary judgment" and that "this is a private controversy under state law among non-debtors concerning who controls CRDI after the sale of the Property." (App. Br. at 30).

District courts have original but not exclusive jurisdiction of all bankruptcy cases under Title 11 of the United States Code, and *all cases arising in or related to cases thereunder*. 28 U.S.C. 1334(b); *AJ Ruiz Consultoria Empresarial S.A. v. Banco Bilbao Vizcaya Argentaria, S.A.*, No. 22-CV-00521, 2022 WL 1831171, at *2 (S.D.N.Y. June 3, 2022). However, "[i]n this district, all such proceedings are automatically referred to the bankruptcy court." *AJ Ruiz*, 2022 WL 1831171, at *2. Cases that either "arise under" the Bankruptcy Code or "arise in" a bankruptcy case are deemed "core" proceedings, while those that "relate to" a bankruptcy case are cases that affect the implementation, consummation, execution, or administration of the confirmed plan. *47*

*E. 34th St. (NY), L.P. v. BridgeStreet Worldwide, Inc.*, No. 20-CV-09978, 2021 WL 2012296, at

*3 (S.D.N.Y. May 20, 2021).[2]

> The Bankruptcy Court determined here that:

>> [T]his matter should not be remanded to enable . . . jurisdiction to
>> be circumvented . . . . The arguments that the litigants are making
>> here as to their rights as 'members' or 'congregants' are issues that
>> I already have decided and that are on appeal. It's just that they now
>> say that, rather than them being members or congregants of Mosdos,
>> they're members or congregants of CRDI . . . those issues are core
>> issues. They go to CRDI's ability to rely on what it received under
>> the plan.

(Tr. at 18:12-19:03). The Court agrees with the determination that this proceeding is core and has,

in large part, already considered this issue. When this Court denied Appellants leave to appeal the

Bankruptcy Court's decision denying their motion to remand, it noted that:

>> Although the Court need not determine on this motion whether the
>> Bankruptcy Court has subject matter jurisdiction over the Adversary
>> Proceeding, it is worth noting that the extensive precedent cited by
>> Defendants on this issue strongly supports the Bankruptcy Court's
>> conclusion that it has subject matter jurisdiction.

*Congregation Radin Dev. Inc. v. Henig*, No. 21-CV-08691, 2022 WL 1063115, at *3 (S.D.N.Y.

Mar. 30, 2022). The only thing that has changed between Appellants' motion to remand and the

instant challenge to subject matter jurisdiction is that Appellants removed CRDI as a plaintiff by

filing an Amended Complaint in the underlying adversary proceeding. However, the inclusion or

removal of CRDI was not the determinative factor for subject matter jurisdiction.[3] The reason that

---

[2] "'[A]rising in' jurisdiction 'covers claims that are not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the bankruptcy.'" *Tilton v. MBIA Inc.*, 620 B.R. 707, 713 (S.D.N.Y. 2020) (quoting *Baker v. Simpson*, 613 F.3d 346, 350 (2d Cir. 2010)). "'[R]elated to' jurisdiction provides bankruptcy jurisdiction to any action if the 'outcome might have any conceivable effect on the bankrupt estate.'" *Id.* (quoting *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011)).

[3] Indeed, the Bankruptcy Court noted, "I do not believe that the reason I declined to grant th[e] [remand] motion then was simply because CRDI was in the caption as a plaintiff." (Tr. at 14:14-16).

remand was inappropriate, and that the Bankruptcy Court's exercise of subject matter jurisdiction was proper, is because this proceeding involves the enforcement of the Bankruptcy Court's own orders and preservation of the substantive effect of the Plan, specifically through the Injunction.

The Injunction, *inter alia*, prohibited Appellants from entering or remaining on the Property because the Property was rightfully owned by CRDI. Appellants held a meeting the same day the Injunction was issued wherein they purported to name themselves the trustees of CRDI, in a blatant attempt to undermine the effect of the Injunction. As the Bankruptcy Court aptly noted, "it's really transparent what happened here, which is that a light bulb went off in someone's head, and they said, hey we're losing on the property issue, so let's just say we're CRDI now." (Tr. at 17:20-23). If Appellants prevailed in this case, then each of the Bankruptcy Court's prior orders prohibiting them from entering the Property would be of no effect and the Plan itself, which transferred the Property from Mosdos to CRDI would be subverted in all but name. Under these circumstances, the Bankruptcy Court clearly has subject matter jurisdiction to enforce and preserve its own orders. *In re Texaco Inc.*, 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995) ("A bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders including those providing for discharge and injunction").

The Bankruptcy Court had subject matter jurisdiction over this adversary proceeding. Its grant of summary judgment is, in that regard, affirmed.

II.    <u>No Genuine Issues of Material Fact</u>

Appellants also challenge the Bankruptcy Court's summary judgment decision because: (i) the "argument that CRDI has no congregants that could have voted to elect the plaintiff as CRDI's trustees is wrong as a matter of both law and fact;" and (ii) "even if that evidence is not sufficient

to defeat summary judgment, there are numerous disputed material factual issues that could be resolved only through discovery." (App. Br. at 32-33).

Appellants first aver that Appellees "asserted in the Bankruptcy Court, incorrectly, that CRDI has no congregants that could possibly have attended the May and September 2021 membership meetings to elect new trustees and that the membership meetings were not properly called or noticed in any event, and therefore, that any actions taken at the dispute meetings were ineffective." (App. Br. at 33). The Bankruptcy Court did not, however, determine whether CRDI had congregants or not; and that was not a fact relied upon in ruling on summary judgment. The Bankruptcy Court explicitly declined to resolve the fact issue of who the congregants and trustees of CRDI were, and only determined who they were not as a matter of law. The Bankruptcy Court determined, under the Religious Corporations Law, that Appellants were not members of CRDI and, therefore, they did not have standing to challenge the election of trustees of CRDI. (*See* Tr. at 44:18-24 ("I don't think that whether the [May 25, 2021] election was conducted properly, with proper notice and the like, can be decided on summary judgment. But I do think I can decide that the people that called the election, and the plaintiffs here are not members of CRDI. And if they're not members of CRDI, they wouldn't have standing to seek a declaration that [Appellees] are not CRDI's board members.")). The Court agrees, as discussed *infra*, that Appellants were not members of CRDI. As such, they have no standing to challenge Appellees' election as trustees and their first argument fails as a matter of law.

Appellants' next argument rises and falls on an interpretation of RCL § 195 and the by-laws of CRDI, which the Bankruptcy Court properly considered on the record. *See e.g., Martinelli v. Bridgeport Roman Cath. Diocesan Corp.*, 196 F.3d 409 (2d Cir. 1999) ("The First Amendment does not prevent courts from deciding secular civil disputes involving religious institutions when

12

and for the reason that they require reference to religious matters . . . ."); *see also, e.g. Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218 (2d Cir. 2019) (interpreting corporate bylaws as a matter of law). RCL § 195 establishes that the voters of a religious corporation, qualified to elect the trustees thereof are:

> All persons who are then members in good and regular standing of such church by admission into full communion or membership therewith in accordance with the rules and regulations thereof . . . or [those] who have been stated attendants of divine worship in such church and have regularly contributed to the financial support thereof.

RCL § 195 thus has two prongs for potential membership in a religious corporation—good and regular standing or stated attendants of divine worship in such church and regular financial support. Appellants meet neither prong.

Good standing in CRDI, for purposes of the first prong of RCL § 195, is determined by CRDI's by-laws, which provide that:

> Membership in this organization is open to all persons of the Jewish faith, who shall be sabbath observing and who accept upon themselves to follow in the tenets of the Jewish faith and wish to advance the principles of the Jewish faith according to the teachings and directions of the saintly and revered Rabbi Israel Mayer Kagan 1834-1933 as taught by the ecclesiasticle leadership of the Corporation who shall be a descendant of the Holy Rabbi. Members shall pay annual dues, if so fixed by the Board of Trustees.

(Br. Doc. 64-29 at 5).

Appellants claimed, at the March 4, 2022 hearing on summary judgment, that because they followed the tenets of the Jewish faith according to the teachings of Rabbi Kagan as taught by his descendant (Rabbi Mayer) and paid dues to that descendant, that they (Appellants) automatically became members of CRDI. However, that "[m]embership in th[e] organization is open to [certain] persons" does not mean that all such people automatically become members. *Cohen v. Berliner*,

2021 N.Y. Slip. Op. 32857 (N.Y. Sup. Ct. 2021) is instructive on this point. There, plaintiffs asserted membership in a religious corporation pursuant to RCL § 195 and purported to have called a special meeting thereof to elect new trustees. The *Cohen* plaintiffs "maintained that anyone who regularly prayed in a Ger synagogue, contributed to Ger institutions and whose names appeared in the Ger phone book automatically became members in good and regular standing of the Congregation." (*Id.*). The court rejected the proposition that any person who themselves claimed to meet the criteria of membership could call and vote at a special meeting without "any connection to such corporation." (*Id.*). Claiming to be a member of a religious corporation, without more, is insufficient to actually become a member under the first prong of RCL § 195. (*Id.*).

The claim to membership herein is particularly ineffective considering Appellants' extended *adversarial* relationship with CRDI. As the Bankruptcy Court noted at a hearing in adversary proceeding No. 21-07023 (which occurred shortly after the instant matter was filed):

> I often quote the first rule of holes, which is when you're in one, stop digging. If these people, who are now claiming that they are CRDI actually persist in it, their hole will be so deep that they won't be able to get out of it. There will be serious consequences for this. I mean, it's just, it's just outrageous. If that's the basis for someone actually saying that they can burst in and trespass, I think at that point, it's a crime.

*Congregants of Mosdos Chofetz Chaim, Inc. v. Mosdos Chofetz Chaim, Inc.*, No. 21-07023 (Bankr. S.D.N.Y. 2021) (Doc. 57 at 29:10-17). This Court agrees that it defies credulity for the same people who have for years been adverse to and have repeatedly sued CRDI to all of a sudden claim to *be* CRDI. Appellants' thinly-veiled attempt to protect themselves and bypass the restrictions set forth in the Injunction does not pass muster as a matter of law. Neither the first prong of RCL § 195 nor CRDI's by-laws confer membership upon people who are clearly and repeatedly adverse to CRDI, both in litigation and in practicality, simply because they now say they are members in good and

14

regular standing. Appellants, including Rabbi Mayer, have been barred from entering *CRDI's* Property by multiple court orders. How could those same people be considered in good and regular standing with CRDI? The basic premise of the argument is preposterous; and the unveiling of the argument on the day the Injunction was issued barring Appellants from CRDI's Property reeks of gamesmanship. Equally clear is the fact that while Appellants may have been members of the Mosdos Congregation, nothing legally or otherwise converted that membership in the Mosdos Congregation to a membership in CRDI. CRDI owns real estate and does not host religious services. Mosdos did not merge into or otherwise combine with CRDI.

Appellants likewise fail to meet the second prong of people eligible to elect trustees under RCL § 195, i.e., people "who have been stated attendants of divine worship in such church and have regularly contributed to the financial support thereof." Again, *Cohen v. Berliner* is instructive. The court there found the second prong inapplicable to establish membership for the plaintiffs, who claimed to attend services of the religious corporation in question, which was only established to maintain a religious summer camp. The court noted that the second prong required "regular attendance according to the customs and usages of the church in question, rather than occasional or sporadic visits." *Cohen*, 2021 Slip. Op. 32857.[4] Here, similarly, CRDI maintained and owned the premises for religious purposes but leased the Yeshiva to CCI to conduct services. Appellants could not have attended CRDI's services because, like the summer camp in *Cohen*, it did not host any. CRDI was formed to and does own real estate. It simply has not offered religious services at any times relevant herein.

---

[4] Appellants attempt to distinguish *Cohen* on this prong, arguing that "[a]t issue there was whether there were sufficient signatories from a *not-for-profit corporation* to have a special meeting." (Reply at 24 (emphasis in original)). That argument fails because, as recognized in the Amended Complaint, CRDI too is a "not-for-profit, religious corporation." (*See* Am. Compl. at 2).

Moreover, even if CRDI did host services, Appellants rely only on "declarations submitted by [themselves] to the Bankruptcy Court . . . that they have regularly attended worship services in the Shul on the Kiryas Radin campus, which were all conducted by Rabbi Mayer Zaks and that they have regularly provided financial support to the CRDI congregation" in an attempt to prove that they themselves attended divine worship at CRDI. (App. Br. at 42). Notwithstanding the fact that Appellants' declarations are entirely self-serving and devoid of any evidentiary support, they do not prove that Appellants attended CRDI services because, fundamentally, Rabbi Mayer is not a part of CRDI.[5]

Appellants claim to be members of CRDI because they attend Rabbi Mayer's services. Yet Rabbi Mayer is only affiliated with CRDI if Appellants' position is proven—the argument is circular and amounts to nothing more than, again, an unsupported conclusion declaring that Appellants are CRDI because Appellants say so. Adding to the absurdity is Appellants' argument that because they continued to worship on the Property (against CRDI's wishes) for a period of time under the Bankruptcy Court's Order, that fact somehow establishes affiliation with CRDI. The argument is, as Judge Drain noted, "nothing more than an ipse dixit," and does not rise to the level of a material fact sufficient to defeat summary judgment. (*See* Tr. at 31:02-06 ("[The complaint] asserts that the plaintiffs are the trustees. And they haven't given any basis for that other than basically an ipse dixit, which is that, well, we were worshipping there, and so, we have a right to continue worshipping there. And if the worship there is under the guise of CRDI, then

---

[5] To the extent Appellants argue that these declarations suffice to create genuine issues of material fact, (Reply at 12-13), it is error. *See Walker v. Carter*, 210 F. Supp. 3d 487, 503 (S.D.N.Y. 2016) ("[A] nonmoving party's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment.") (quoting *JF v. Carmel Cent. Sch. Dist.*, 168 F.Supp.3d 609, 616 (S.D.N.Y. 2016)); *see also New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 326 (S.D.N.Y. 2015) ("[U]nsubstantiated and self-serving testimony is insufficient, without more, to defeat summary judgment.").

we can choose CRDI's board.")). Appellants fail to meet the second prong of membership under RCL § 195 and the Bankruptcy Court's analysis thereunder is, accordingly, affirmed.[6]

Each and every purported issue of fact that Appellants now raise was immaterial to the Bankruptcy Court's grant of summary judgment because the basic premise upon which the case depends—that Appellants and their supporters were voting members of CRDI—fails.[7]

Appellees, thus, are entitled to judgment as a matter of law and the Bankruptcy Court's grant of summary judgment was appropriate. The Order is, therefore, affirmed.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's March 7, 2022 Order at Br. Doc. 104 is AFFIRMED.

The Clerk of the Court is respectfully directed to terminate this case.

**SO ORDERED:**

Dated:    White Plains, New York
          October 13, 2022

_____
PHILIP M. HALPERN
United States District Judge

---

[6] That Appellants fail to meet the requirements for membership under RCL § 195 is not a genuine issue of material fact, it is a matter of law. Appellants point to no authority—and the Court is unaware of any—for the proposition that disagreement over the interpretation of a statute is sufficient to preclude summary judgment.

[7] These purported factual issues include: (i) the procedural requirements for calling the May 25, 2021 meeting (App. Br. 42-44); (ii) the procedural requirements for calling the September 1, 2021 meeting (App. Br. 44-46); (iii) whether Rabbi Aryeh was properly elected as Chief Rabbi (Reply at 17-20); and (iv) who the congregants, trustees, or members of CRDI actually are. Simply put, and as the Bankruptcy Court decided, there is one issue upon which this entire case depends—whether Appellants and their supporters are voting members of CRDI. The Bankruptcy Court properly determined, based upon a legal analysis of RCL § 195 and CRDI's by-laws, that they were not such members. Accordingly, no other issue of fact was material. Moreover, because Appellees were entitled to judgment as a matter of law no matter what discovery on these issues might show, the Bankruptcy Court did not err by making its decision prior to such discovery. Equally clear is that no amount of discovery would clean up Appellants' basic premise that they were members of CRDI. Simply put, there is no proof available, other than Appellants' own *ipse dixit* statements, to establish Appellants' basic tenet that they are members of CRDI. The refusal to grant discovery to Appellants was not error.